**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHEILA RUSSELL; JIM SPLAIN; SUE SPLAIN; JANELLE SPLAIN; SUSAN HOUSEL; JOHN CHAFFEE; CAROL FRENCH; CLAUDE ARNOLD; LYNSEY ARNOLD; ROBERT DONOVAN; ROBIN DONOVAN; CAROLYN KNAPP; N.K., a MINOR BY CAROLYN KNAPP, GUARDIAN; M.K., a MINOR BY CAROLYN KNAPP, GUARDIAN; ANGEL UMBACH; DAVID UMBACH; and ALLISON KOLESAR, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 14-cv-148<br><br>The Hon. Matthew W. Brann |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CHESAPEAKE APPALACHIA, L.L.C.; and SUPERIOR WELL SERVICES, INC., | ) ) ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Defendants Chesapeake Appalachia, L.L.C. ("Chesapeake") and Nabors Completion & Production Services Co., incorrectly named as Superior Well Services, Inc. ("Nabors"), (collectively, "Defendants") submit the following Brief in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6):

### I. FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT

Plaintiffs are property owners who claim that the noise, traffic, and lights from Defendants' oil and gas drilling operations are a nuisance, and that materials used and recovered in the oil and gas drilling and production process have caused them various alleged damages. As redress for these alleged injuries, Plaintiffs have leveled claims against Defendants for nuisance, negligence, and negligence *per se*, seeking injunctive relief as well as compensatory and punitive

damages.[1] But Plaintiffs have pleaded nothing more than conclusory statements of *scienter* in support of their demand for punitive damages, and negligence *per se* is not a cause of action. Moreover, several of these Plaintiffs have oil and gas leases with Chesapeake, which bars their civil claims and provides arbitration as their exclusive remedy. Defendants, therefore, move to dismiss these claims.

## II.   STANDARD OF REVIEW

The standard of review for a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), is well-settled and familiar to the Court and the parties. Accordingly, Defendants will not repeat that standard here. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); and *Phillips v. County of Allegheny*, 515 F.3d 224 (3d. Cir. 2008).

## III.   ARGUMENT

### A. THE COMPLAINT PLEADS NO FACTS SUFFICIENT TO SUPPORT AN AWARD OF PUNITIVE DAMAGES AGAINST DEFENDANTS

The Complaint contains the claims of seventeen (17) individuals that are grouped into eight (8) families. **Cmplt. ¶¶ 3-22.** Collectively, Plaintiffs complain about Defendants' activities at twenty-seven (27) natural gas wells operated by Chesapeake. *Id*. **at ¶ 34.** As to Nabors, Plaintiffs allege that it "cemented, installed or maintained the casing for one or more of the [27] gas wells," but Plaintiffs do not allege at which wells Nabors is alleged to have worked. *Id*. **at ¶ 32.** Plaintiffs' alleged damages include personal injuries, property damages, and nuisance-related damages such as traffic, noise, and bright lights. *Id*. **at ¶¶ 50, 60, 62**. With regard to their personal injuries, Plaintiffs allege that various wells "intermittently leaked" gas and other "toxic,

---

[1] Plaintiffs filed their Complaint in the Court of Common Pleas of Dauphin County on December 27, 2013 and served it on Defendants on January 3, 2014. Defendants removed the case to this Court on the basis of diversity on January 28, 2014.

dangerous, and/or radioactive substances" into the ground and air that caused certain plaintiffs, among other ailments, "increased intermittent sinus issues," "intermittent fatigue," "intermittent headaches," "burning eyes," "stomach cramps," "vomiting," and/or "dry skin." *Id. at* **128(f)(i)(g)(h), 130(f), 132(f)(i), and 140(f)(i-iii)**.

Plaintiffs do not allege what these allegedly "toxic, dangerous and radioactive substances" were, or from which particular wells they allegedly leaked. Similarly, although Plaintiffs allege that Defendants' acts or omissions caused the leaks, they do not allege any specific conduct by Defendants. Plaintiffs state nothing more than generalities; namely, that Chesapeake is "engaged in drilling, cementing, fracking, maintenance, or operations activities, or had others engage in such activities on [its] behalf, and/or owned, operated, and/or maintained several natural gas wells in Bradford County, Pennsylvania, on or in close proximity to Plaintiffs' homes and/or property…" *Id*. **at ¶ 34**. According to Plaintiffs, Nabors "cemented, installed, or maintained" the casing "for one or more" of the 27 wells. *Id*. **at ¶ 32**.

Despite not knowing what Chesapeake did, if anything, on these wells, or which well or wells Nabors even worked on, Plaintiffs still allege that whatever they did, they did so "intentionally," "wantonly," and "recklessly," thereby entitling Plaintiffs to punitive damages. *Id*. **at ¶ 159**. Plaintiffs' allegations are patently insufficient. Under *Twombly* and *Iqbal*, a plaintiff must plead facts, not labels, in support of his or her claim. "Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as 'intentionally' or 'recklessly' without supporting factual allegations." *Turner v. Lopez*, No. 13–872, 2013 WL 6448313, *2 (M.D.Pa. Dec. 9, 2013)[2] (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

---

[2] Pursuant to LR 7.8(a) copies of unpublished authorities are attached to this brief as **Exhibit A**.

In Pennsylvania, "punitive damages are an extreme remedy available only in the most exceptional circumstances." *Tucker v. Bernzomatic*, No. 09–5881, 2010 WL 1838704, at *2 (E.D.Pa. May 4, 2010) (internal quotations omitted). Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages, and permits punitive damages only for conduct that is "outrageous because of the defendant's evil motives or his reckless indifference to the rights of others." Restatement (Second) of Torts § 908(2); *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (Pa. 1984); *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (Pa. 1963). To establish the facts necessary to make out a punitive damages claim, "the state of mind of the actor is vital" and the tortfeasor's act or failure to act "must be intentional, reckless or malicious." *Hutchinson v. Luddy*, 582 Pa. 114, 870 A.2d 766, 770-771 (Pa. 2005). A showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. *Phillips v. Cricket Lighters*, 584 Pa. 179, 883 A.2d 439, 445 (Pa. 2005). A plaintiff is required to allege that the defendant's conduct was outrageous, showing intentional, wanton, reckless or malicious conduct. *SHV Coal, Inc. v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702 (Pa. 1991).

Here, Plaintiffs' Complaint alleges that Defendants' gas well operations were a nuisance, and leaked substances causing them minor injuries. Nowhere in the Complaint do Plaintiffs allege that Defendants' operations are any different than those going on throughout the state, or more importantly, that Defendants subjectively knew or intended to inconvenience Plaintiffs or expose them to harm. Even accepting every allegation in the Complaint as true, Plaintiffs' allegations do not meet the high threshold necessary to impose punitive damages. Plaintiffs' demands for punitive damages must, therefore, be dismissed as to all counts of the Complaint.

### B. COUNT III AGAINST CHESAPEAKE MUST BE DISMISSED WITH PREJUDICE BECAUSE NEGLIGENCE *PER SE* IS NOT A SEPARATE CAUSE OF ACTION

Count II of the Complaint asserts a claim for negligence against Chesapeake, and Count III asserts a claim for "negligence *per se*." Negligence *per se* is simply a theory of negligence, not a separate cause of action. Count III must, therefore, be dismissed with prejudice.

"Negligence *per se* is a subset of the basic negligence tort, and is based on the theory that the violation of a statute may serve as the basis for a finding of negligence." *Lieberger v. Walter Co.*, 74 Pa. D. & C.4th 270, 291-292 (C.C.P. Fayette County 2005). The concept of negligence *per se* establishes both duty, and the required breach of duty, where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. *Cabiroy v. Scipione,* 767 A.2d 1078, 1079 (Pa.Super.2001).

"However, under Pennsylvania law, 'negligence per se is not a separate cause of action.' " *Ramsey v. Summers*, No. 10-829, 2011 WL 811024, at *2 (W.D.Pa. March 1, 2011) (quoting *Zaborowski v. Hospitality Care Center of Hermitage, Inc.,* 60 Pa. D. & C.4th 474, 498 (C.C.P. Mercer County 2002)). Rather, "negligence per se [is] a method of proving certain elements of a negligence claim (*i.e.,* duty and breach of the duty) rather than a distinct cause of action." *In re American Investors Life Ins. Co. Annuity Marketing and Sales Practices Litigation*, MDL Docket No. 1712, 2007 WL 2541216, at *34 (E.D.Pa. Aug. 29, 2007). *See also Daniel Boone Area School District v. Lehman Bros., Inc.*, 187 F.Supp.2d 400, 407 (W.D.Pa.2002) ("Negligence *per se* is not a distinct cause of action in tort, but rather an evidentiary presumption that, in certain circumstances, a defendant's mere breach of a statute's requirements is proof of a breach of its duty of care.").

Accordingly, because negligence *per se* is not a cause of action and Count III is merely a duplicative claim for negligence, Plaintiffs' claim for "negligence *per se*" against Chesapeake in Count III of the Complaint must be dismissed with prejudice.

### C. PLAINTIFFS' NEGLIGENCE CLAIM AGAINST CHESAPEAKE, BASED ON ITS ALLEGED VIOLATION OF THE SWMA, MUST BE DISMISSED WITH PREJUDICE

Plaintiffs' Complaint alleges that Chesapeake can be held liable for negligence based upon alleged violations of the Solid Waste Management Act, 35 P.S. § 6018.101 *et seq* ("SWMA"). **Complaint, ¶ 170(b)**. Plaintiffs are mistaken. Pennsylvania courts have repeatedly held that violations of the SWMA do not provide a basis for a negligence action. *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413 (M.D.Pa.1989); *Fallowfield Dev. Corp. v. Strunk*, Nos. 89-8644 and 90-4431, 1991 WL 17793, at *10 (E.D.Pa. Feb. 11, 1991)("*Fallowfield II*") (dismissing negligence claim based upon SWMA violations because "[t]he statute is intended to protect the health, safety and welfare of the community and not individuals seeking to recover pecuniary losses."); *Pottstown Indus. Complex v. P.T.I. Services, Inc.*, No. 91-5660, 1992 WL 50084, at *14 (E.D.Pa. March 10, 1992) (citing, with approval, *Fallowfield II* for the proposition that "a violation of…the SWMA did not constitute negligence *per se,* because the statutory purpose was to secure to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm."); *Tri-County Business Campus Joint Venture v. Clow Corp.*, 792 F.Supp. 984, 995 (E.D.Pa.1992) (granting a motion for summary judgment as to plaintiff's negligence claim based on SWMA); *Wagner v. Anzon, Inc.*, 453 Pa.Super. 619, 629, 684 A.2d 570, 575 (Pa.Super.1996) (citing, with approval, *Fallowfield II's* holding that there can be no negligence *per se* based upon the SWMA because it is "intended to protect the health, safety and welfare of the community and not

individuals seeking to recover pecuniary losses."). Thus, Plaintiffs' negligence claims against Chesapeake that are based upon violations of the SWMA must be dismissed with prejudice.[3]

### D. THE CLAIMS OF PLAINTIFFS UMBACH, DONOVAN, AND ARNOLD AGAINST CHESAPEAKE MUST BE DISMISSED AND COMPELLED TO ARBITRATION

Plaintiffs Umbach, Donovan, and Arnold have entered into written, valid, oil and gas leases with Chesapeake that contain agreements to arbitrate. Specifically, each lease contains the following arbitration agreement:

> ARBITRATION: *In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration* in accordance with the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

**Leases, Exhibit A to Defendants' Motion**.[4] (emphasis supplied).

This language is unambiguous: disputes over damages caused by Chesapeake's operations must be arbitrated. Therefore, this Court lacks jurisdiction to decide the claims of Plaintiffs Umbach, Donovan, and Arnold, all of which must be dismissed and compelled to arbitration.

---

[3] *Sharp v. Artifex, Ltd.*, 110 F.Supp.2d 388, 393 (W.D.Pa.1999) and *Roth v. Cabot Oil & Gas Corp.*, 919 F.Supp.2d 476, 489 (M.D.Pa.2013) both cite an earlier decision, *Fallowfield Dev. Corp. v. Strunk,* No. 89–8644, 1990 WL 52745 (E.D.Pa. April 23, 1990)("*Fallowfield I*"), for the proposition that SWMA violations do, in fact, support a negligence *per se* theory. Notably, neither case addresses *Fallowfield II*.

In *Fallowfield I*, the Court held that the policies of the SWMA would be furthered by allowing it to serve as a basis for negligence *per se*. 1990 WL at *20. Later, in *Fallowfield II*, the Court revisited the issue, and held that since the SWMA was designed to protect the public at large and not a specific class of persons, it could *not* undergird negligence *per se*. 1991 WL at *10.

Defendants believe the reasoning of *Fallowfield II* and its focus on who the statute is designed to protect as dispositive of negligence *per se* is persuasive and controls and that *Sharp* and *Roth's* reliance on *Fallowfield I* is therefore misplaced.

[4] In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The leases are public records. *See, e.g., Sarsfield v. Citimortgage, Inc.*, 707 F.Supp.2d 546, 553 n. 2 (M.D.Pa.2010) ("the mortgage was recorded in the Adams County Recorder of Deeds office, and therefore it is a matter of public record which also may be considered by the court in deciding a 12(b)(6) motion."); *Carroll v. Welch,* No. 06–4502, 2007 WL 1377654, at *1 (E.D.Pa. May 9, 2007) (considering deed when deciding motion to dismiss because a deed is a public record).

Questions of arbitrability are presumed to be questions for judicial determination. *See AT & T Techs., Inc. v. Communc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Quilloin v. Tenet HealthSystem Phila., Inc.,* 673 F.3d 221, 228 (3d Cir.2012). Traditionally, a motion to compel arbitration is analyzed using the same standard of review as a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). *Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 597–98 (3d Cir.2004).

"Under Pennsylvania law, the parties must submit an issue to arbitration where: (1) the parties entered into an agreement to arbitrate, and (2) the dispute falls within the scope of that agreement." *McAlister v. Sentry Ins. Co.,* 958 F.2d 550, 553 (3d Cir.1992) (citing *Rocca v. Pa. Gen. Ins. Co.,* 358 Pa.Super. 67, 516 A.2d 772, 772–73 (Pa.Super.1986)). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *E.I. Dupont de Nemours & Co. v. Rhone Poulenc & Resin Intermediates, S.A.S.,* 269 F.3d 187, 194 (3d Cir.2001) (citations omitted). If, on the other hand, a valid arbitration agreement exists between the parties, and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration. *Highmark Inc. v. Hospital Service Ass'n. of Northeastern Pennsylvania,* 785 A.2d 93, 98 (Pa.Super.2001), *appeal denied*, 568 Pa. 720, 797 A.2d 914 (2002).

Pennsylvania courts generally take a broad view of what matters must be arbitrated. *See, generally, Brennan v. General Acc. Fire & Life Assurance Corp.,* 574 A.2d 580 (Pa.1990) (requiring arbitration under common law arbitration rules where insurance contract required arbitration over whether prior awards were "set-off" against decedent's UIM coverage). The explicit words of the agreement to arbitrate control whether arbitration is required. *Standard Venetian Blind v. American Empire Ins. Co.,* 469 A.2d 563, 566 (Pa.1983), *see also Koenig v.*

*Progressive Ins. Co.*, 599 A.2d 690, 691 (Pa.Super.1991) ("Where the language of the contract is clear and unambiguous, a court is required to give effect to that language." (citation omitted)).

Here, the explicit language of the arbitration agreement between Chesapeake and Plaintiffs Umbach, Donovan, and Arnold requires disputes concerning damages caused by Chesapeake's operations to be determined by arbitration. Unquestionably, Plaintiffs Umbach, Donovan, and Arnold's claims are disputes concerning damages caused by Chesapeake's operations. The Court must, therefore, dismiss these claims and compel them to arbitration.

### E. IN THE ALTERNATIVE, THE NUISANCE CLAIMS OF PLAINTIFFS UMBACH, DONOVAN, AND ARNOLD AGAINST CHESAPEAKE MUST BE DISMISSED BECAUSE CHESAPEAKE DID NOT INTERFERE WITH THEIR USE AND ENJOYMENT OF THEIR LAND BY ACTING IN ACCORDANCE WITH THE OIL AND GAS LEASES EXECUTED BY THOSE PLAINTIFFS

In the alternative, should the Court not dismiss, and compel to arbitration, the claims of Plaintiffs Umbach, Donovan, and Arnold, the Court should dismiss those claims, as a matter of law, because Plaintiffs Umbach, Donovan, and Arnold granted Chesapeake oil and gas leases that authorize Chesapeake's oil and gas operations, which cannot now be claimed to be a nuisance after these Plaintiffs have already agreed to, and have been compensated, for the very activities of which they now complain. The nuisance claims of Plaintiffs Umbach, Donovan, and Arnold against Chesapeake must, therefore, be dismissed with prejudice.

Pennsylvania "follows the Restatement (Second) of Torts' formulation of private nuisance." *Golen v. Union Corp.*, 718 A.2d 298, 300 (Pa. Super. 1998); *see Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 313 (3d Cir. 1985); *Curry Coal Co. v. M. C. Arnoni Co.*, 266 A.2d 678, 681 (Pa. 1970). The Restatement defines private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." RESTATEMENT (SECOND)

OF TORTS § 821D (1979). Section 822 of the Restatement sets forth the elements necessary to establish a *prima facie* case for private nuisance:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an *invasion of another's interest in the private use and enjoyment* of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

§ 822 (emphasis added). Comment b explains:

> The phrase 'interest in the use and enjoyment of land' is used in this Restatement in a broad sense. It comprehends not only the interests that a person may have in the actual present use of land for residential, agricultural, commercial, industrial and other purposes, but also his interests in having the present use value of the land unimpaired by changes in its physical condition… 'Interest in use and enjoyment' also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself.

§ 821D cmt. b.

The "historical role of private nuisance" is to "'efficiently resolv[e] conflicts between neighboring, contemporaneous land uses.'" *Diffenderfer v. Staner*, 722 A.2d 1103, 1110 (Pa. Super. 1998) (quoting *Philadelphia Elec. Co.*, 762 F.2d at 314). Both the Superior Court of Pennsylvania and the Third Circuit have recognized that "'the goal of nuisance law is to achieve efficient and *equitable* solutions to problems created by discordant land uses.'" *Id*. (quoting *Philadelphia Elec. Co.*, 762 F.2d at 314) (emphasis added). Based upon these principles, the Superior Court and the Third Circuit have held that "'Neighbors, unlike the purchasers of the land upon which a nuisance exists, have no opportunity to protect themselves through inspection or[sic] *negotiation*.' " *Id.* (quoting *Philadelphia Elec. Co.*, 762 F.2d at 314) (emphasis added).

It is a basic tenet of property law that "every man has the right to the natural use and enjoyment of his own property. . ." *Pa. Coal Co. v. Sanderson*, 6 A. 453, 457 (Pa. 1886); *see Ressler v. Gerlach*, 149 A.2d 158, 160 (Pa. Super. 1959). Here, Plaintiffs Umbach, Donovan, and Arnold exercised their rights to the use and enjoyment of their land when they signed oil and gas leases with Chesapeake. The leases contain a "Leasing Clause" that provides, in relevant part:

> Lessor hereby leases exclusively to Lessee all the oil and gas . . . and their liquid or gaseous constituents . . . underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for Lessee, at its election, *to explore for, develop, produce, measure, and market production from the Leasehold, and from adjoining lands, using methods and techniques which are not restricted to current technology*, including the right to conduct geophysical and other exploratory tests; *to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, and to construct pipelines with appurtenant facilities, including data acquisition*, *compression and collection facilities for use in the production and transportation of products from the Leasehold or from neighboring lands across the leasehold*, to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground, regardless of the source thereof, including the injecting of gas therein and removing the same therefrom; to protect stored gas; to operate, maintain, repair, and remove material and equipment.

*See* Exhibit A (emphasis added). In addition to a "Royalty" provision, these contracts also contain a merger clause, *i.e.* the "Entire Contract" provision, and a separate "Damages" provision. The "Damages" provision reads: "Lessee will remove unnecessary equipment and materials and reclaim all disturbed lands at the completion of activities, and Lessee agrees to repair any damaged improvements to the land and pay for the loss of growing crops or marketable timber."

The language of the contractual agreements between Chesapeake and Plaintiffs Umbach, Donovan and Arnold unequivocally establishes that, in exchange for just compensation, Plaintiffs Umbach, Donovan, and Arnold freely forfeited any cause of action they had, or could have, against Chesapeake arising from the contract, whether the alleged tortious acts occurred on

their property, or that of neighboring lands, unless the cause of action was within the purview of the "Damages" provision. Additionally, there are no allegations that Defendants were notified of, and failed to repair, any damaged improvements to the land or pay for the loss of growing crops or marketable timber.

Plaintiffs Umbach, Donovan, and Arnold are now attempting to circumvent the contract they agreed to, following arm's length negotiations, by bringing a cause of action in nuisance. Given that Plaintiffs Umbach, Donovan, and Arnold have already been compensated for any partial loss of the use and enjoyment of their land, their claims are not only disingenuous but also run afoul with the goal of nuisance law — to achieve efficient and equitable solutions. If Plaintiffs Umbach, Donovan, and Arnold are dissatisfied with the amount of compensation they received under their oil and gas leases with Chesapeake, that is an issue in contract law for an arbitrator, not one in tort for this court. Notably, however, Plaintiffs would be unlikely to prevail on any claim of inadequate compensation, because courts will not inquire as to the adequacy of consideration. *Thomas v. Thomas Flexible Coupling Co.*, 46 A.2d 212, 216 (Pa. 1946). Altogether, having already consented to, and been compensated for, the operations of Chesapeake of which they now complaint, the nuisance claims of Plaintiffs Umbach, Donovan, and Arnold must be dismissed with prejudice.

## IV. CONCLUSION

WHEREFORE, in light of the foregoing, the Defendants, Chesapeake Appalachia, L.L.C. and Nabors Completion & Production Services Co., incorrectly named as Superior Well Services, Inc., respectfully request this Honorable Court grant their Motion to Dismiss as set forth in the attached, proposed order.

Respectfully submitted,

/s/ Michael P. Leahey
Michael P. Leahey **(PA Bar No. 92933)**
JACKSON KELLY PLLC
Three Gateway Center
401 Liberty Ave., Ste. 1500
Pittsburgh, PA  15222
(412) 434-8816
mpleahey@jacksonkelly.com

*Attorney for Defendant Chesapeake Appalachia, L.L.C.*

/s/ Daniel R. Michelmore
Daniel R. Michelmore **(PA Bar No. 94460)**
JACKSON KELLY PLLC
Three Gateway Center
401 Liberty Ave., Ste. 1500
Pittsburgh, PA  15222
(412) 434-8809
drmichelmore@jacksonkelly.com

*Attorney for Defendant Nabors Completion & Production Services Co., incorrectly named as Superior Well Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Brief in Support of Motion to Dismiss pursuant to FRCP 12(b)(6)* was served upon the following counsel of record, via ECF, on this 4th day of February, 2014.

Edward Ciarimboli
FELLERMAN & CIARIMBOLI
183 Market St., Suite 200
Kingston, PA 18704

and

Peter Britton Bieri
SPEER LAW FIRM, P.A.
104 W. 9th Street, Suite 400
Kansas City, MO 64105

*Counsel for Plaintiff*

/s/ Michael P. Leahey
Michael P. Leahey, Esquire

/s/ Daniel R. Michelmore
Daniel R. Michelmore, Esquire

{V0045634.1}