IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELIA RUSSELL, JIM SPLAIN, | : | Case No. 4:14-cv-00148 |
| SUE SPLAIN, JANELLE SPLAIN, | : | |
| SUSAN HOUSEL, JOHN CHAFFEE,: | | |
| CAROL FRENCH, CLAUD | : | |
| ARNOLD, LYNSEY ARNOLD, | : | (Judge Brann) |
| ROBERT DONOVAN, ROBIN | : | |
| DONOVAN, CAROLYN KNAPP, | : | |
| N.K., *a minor, by Carolyn Knapp,* | : | |
| *guardian,* M.K., *a minor, by Carolyn* | : | |
| *Knapp, guardian,* ANGEL | : | |
| UMBACH, DAVID UMBACH, and | : | |
| ALLISON KOLESAR, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| CHESAPEAKE APPALACHIA, | : | |
| L.L.C., and SUPERIOR WELL | : | |
| SERVICES | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
November 21, 2014

Before the Court are Defendant Chesapeake Appalachia, L.L.C. and

Defendant Superior Well Services'[1] ("Defendants") Motion to Dismiss for Failure

to State a Claim, the Defendants' Motion to Sever, and the Defendants' Motion for

---

[1] In their Brief in Support of their Motion to Dismiss, Defendants state without further comment or support that Superior Well Services is incorrectly named in the caption, and allege the true defendant should be Nabors Completion & Production Services Co.  See Defs.' Br. Supp. Mot. Dismiss 1, Feb. 4, 2014, ECF No. 5.

a <u>Lone Pine</u> Case Management Order.  The Court retains jurisdiction based on

diversity of citizenship pursuant to 28 U.S.C. § 1332.[2]

For the following reasons, the Defendants' Motion to Dismiss is granted in

part and denied in part; the Defendants' Motion to Sever is denied without

prejudice; and, the Defendants' Motion for a <u>Lone Pine</u> Case Management Order is

denied without prejudice.

## I.    BACKGROUND

The Court writes primarily for the Parties; accordingly, these facts serve

merely to orient the reader in brief.  The Plaintiffs[3] in this case are residents and/or

owners of property situate in Bradford County, Pennsylvania.  The Defendants' are

companies conducting natural gas exploration, extraction, transportation, and

associated activities on or around the Plaintiffs' various properties.

On December 27, 2013, Plaintiffs filed a sixty-five (65) page Complaint in

---

[2] Defendant Chesapeake is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Defs.' Not. Removal, ¶¶ 4–5.  Defendant Nabors is a Delaware corporation with its principal place of business in Texas.  <u>Id.</u>, ¶ 6.  The various Plaintiffs are citizens of Pennsylvania or New Jersey, rendering diversity jurisdiction appropriate.  <u>See</u> 28 U.S.C. § 1332; Defs.' Not. Removal, Ex. 1, Pls.' Compl., ¶¶ 3, 6, 8, 11, 14, 16, 19, 21.

[3] The Plaintiffs in this case, as they appear in the caption, are: Sheila Russell; Jim Splain; Sue Splain; Janelle Splain; Susan Housel; John Chaffee; Carol French; Claude Arnold; Lynsey Arnold; Robert Donovan; Robin Donovan; Carolyn Knapp; N.K., a minor by Carolyn Knapp, guardian; M.K., a minor by Carolyn Knapp, guardian; Angel Umbach; David Umbach; and Allison Kolesar.  For the sake of brevity, the Court refers to them collectively as "Plaintiffs," except in those portions of the Memorandum where they are specifically named.

the Court of Common Pleas of Dauphin County, Pennsylvania.  The Plaintiffs

allege that the noise, traffic, lights, and other aspects of Defendants' operations

constitute common law nuisance, negligence, and negligence *per se*.  The Plaintiffs

seek injunctive relief as well as compensatory and punitive damages.

The Plaintiffs served the Complaint on the Defendants on January 3, 2014,

and the Defendants removed the action to this Court on January 28, 2014 (ECF No.

1).  The Defendants filed their Motion to Dismiss and Motion to Sever on February

4, 2014, and their Motion for a <u>Lone Pine</u> Case Management Order on March 12,

2014.  The Parties have briefed the issues and they are ripe for determination.

## II.   DISCUSSION

### A.   <u>Defendants' Motion to Dismiss</u>

#### 1.   <u>Motion to Dismiss Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>,

550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 662.  The standard seeks to eliminate those

claims that do not present "enough" factual matter, assumed to be true, "to raise a

reasonable expectation that discovery will reveal evidence" in support of the claims. Twombly, 550 U.S. at 556. Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id., 550 U.S. at 570.

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and, (3) consider whether the well-plead components of the complaint and evaluate whether all elements previously identified are sufficiently alleged. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). All well-pleaded facts must be accepted as true at this juncture. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

## 2.   Punitive Damages

The Defendants seek to dismiss Plaintiffs' claim for punitive damages for failing to adequately plead the claim. "[P]unitive damages are an extreme remedy available only in the most exceptional circumstances." Tucker v. Bernzomatic, No. 09–5881, 2010 WL 1838704, *2 (E.D. Pa. May 4, 2010) (internal quotations omitted). Pennsylvania has adopted Section 908(2) of the RESTATEMENT (SECOND) OF TORTS, which permits punitive damages only for conduct that is "outrageous because of the defendant's evil motive or his reckless indifference to

4

the rights of others." <u>Feld v. Merriam</u>, 506 Pa. 383, 485 A.2d 742, 747 (1984)

(quoting <u>Chambers v. Montgomery</u>, 411 Pa. 339, 192 A.2d 355 (1963);

RESTATEMENT (SECOND) OF TORTS, § 908(2)).  "[I]n Pennsylvania, a punitive

damages claim must be supported by evidence sufficient to establish that (1) a

defendant had a subjective appreciation of the risk of harm to which the plaintiff

was exposed and that (2) he acted, or failed to act, as the case may be, in conscious

disregard of that risk."  <u>Lasavage v. Smith</u>, 23 Pa. D& C. 5th 334, 2011 WL

9933458, *3 (Pa. Com. Pl., Lackawanna Cnty., Mar. 31, 2011) (internal quotations

and citation omitted).

    To establish a punitive damages claim, "the state of mind of the actor is

vital.  The act, or the failure to act, must be intentional, reckless or malicious."

<u>Hutchison ex rel. Hutchison v. Luddy</u>, 582 Pa. 114, 870 A.2d 766, 770 (2005)

(quoting <u>Feld</u>, 485 A.2d  at 748) (internal quotations omitted).  A plaintiff must

allege facts sufficient to support a plausible claim demonstrating this intentional,

wanton, reckless or malicious conduct.  <u>See</u> <u>Twombly</u>, 550 U.S. at 556.  A

showing of mere negligence, or even gross negligence, will not suffice to establish

that punitive damages should be imposed.  <u>Phillips v. Cricket Lighters</u>, 883 A.2d

439, 445 (Pa. 2005).

    The only references to the Defendants' state of mind in the Plaintiffs'

Complaint are threadbare recitals alleging that the Defendants "knew or in the exercise of reasonable care should have known" that their "negligent and reckless conduct" caused problems, and that "some or all of the acts and/or omissions of [the Defendants] described herein, including those of its officers, agents, contractors, and/or employees, were intentional and/or grossly, recklessly, and/or wantonly negligent, and were done with utter disregard for the [Plaintiffs'] rights, properties, safety, and well-being." Defs.' Notice Removal, Ex. A, Compl. 39, Jan. 28, 2014, ECF No. 1 [hereinafter Compl.]. There is not a generalized statement of facts plausibly demonstrating the Defendants' subjective appreciation of the risk of harm from which Defendants may form a responsive pleading on the claim for punitive damages; the Plaintiffs' do not make specific allegations beyond mere negligence. See Am. Technical Mach. Corp. v. Masterpiece Enters., Inc., 235 F. Supp. 917, 918 (M.D. Pa. 1964) (Nealon, J.).

This does not meet the high standard for "evil motive" or "reckless indifference" necessary to impose punitive damages in Pennsylvania. Feld, 485 A.2d at 747. Accordingly, the Plaintiffs' punitive damages claim is dismissed without prejudice, and with leave to file an amended complaint. Ruder v. Pequea Valley Sch. Dist., 790 F. Supp. 2d 377, 391 (E.D. Pa. 2011) (granting leave to amend complaint to reassert claim with more specificity); see also Alston v.

6

Parker, 363 F.3d 229, 235 (3d Cir. 2004).

### 3.   Negligence Per Se

"Negligence *per se* is a subset of the basic negligence tort, and is based on the theory that the violation of a statute may serve as the basis for a finding of negligence." Lieberger v. Walter Co., 74 Pa. D. & C.4th 270, 291–92 (Pa. Comm. Pl., Fayette Cnty. 2005).  The concept of negligence *per se* allows a litigant, and ultimately a court, to invoke a statute to supply elements of a negligence claim (*e.g.* duty and breach), when a defendant violates a statute that is designed to prevent the particular harm at issue and meets other applicable criteria.[4]  See, e.g., In re Am.

---

[4] Pennsylvania has adopted Section 286 of the Restatement (Second) of Torts regarding negligence *per se*, which provides:

> § 286.  When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted
>
> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
> > (a) to protect a class of persons which includes the one whose interest is invaded, and
> >
> > (b) to protect the particular interest which is invaded, and
> >
> > (c) to protect that interest against the kind of harm which has resulted, and
> >
> > (d) to protect that interest against the particular hazard from which the harm results.

Restatement (Second) of Torts § 286; see also Congini by Congini v. Portersville Valve Co., 470 A.2d 515, 517–18 (Pa. 1983).

<u>Investors Life Ins. Co. Annuity Mktg. And Sales Practices Litig.</u>, No. CIV.A. 04-2535, 2007 WL 2541216, *34 (E.D. Pa. Aug. 29, 2007); <u>Cabiroy v. Scipione</u>, 2001 PA Super 29, 767 A.2d 1078, 1079 (2001).

While the Plaintiffs attempt to assert both negligence and negligence *per se* in their Complaint, "under Pennsylvania law, 'negligence per se is not a separate cause of action.'" <u>Ramsey v. Summers</u>, No. 10-CV-00829, 2011 WL 811024, *2 (W.D. Pa. Mar. 1, 2011) (quoting <u>Zaborowski v. Lehman Bros., Inc.</u>, 60 Pa. D. & C.4th 474, 498 (Pa. Com. Pl. 2002)). Rather, negligence *per se* is "an evidentiary presumption that, in certain circumstances, a defendants [sic] mere breach of a statute's requirements is proof of a breach of its duty of care. The effect of such a rule is to stamp the defendants [sic] conduct as negligence, with all the effects of common law negligence, but with no greater effect." <u>Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.</u>, 187 F. Supp. 2d 400, 407 (W.D. Pa. 2002) (citing W. PAGE KEETON, ET AL., PROSSER & KEETON ON TORTS 229–31 (5th ed. 1984)).

The Plaintiffs have supplied no case, binding or persuasive, that demonstrates otherwise. Accordingly, Count III of the Plaintiffs' Complaint is dismissed with leave to amend, subject to the following ruling as a matter of law on the Solid Waste Management Act allegations.

*a. Solid Waste Management Act Claim Dismissed*

One of three statutes that the Plaintiffs invoke as a basis for negligence *per se* is Pennsylvania's Solid Waste Management Act (SWMA), 35 P.S. § 6018.101 *et seq.*  Despite an erroneous decision to the contrary, it is firmly established that violations of the SWMA do not provide a basis for a negligence action because the statute is intended to benefit the public generally, not a particular group, as required by the negligence *per se* standard.[5]  See Hartle v. First Energy Generation Corp., 2014 WL 1117930, *5 (W.D. Pa. Mar. 20, 2014) ("This court concludes that the SWMA . . . is intended to benefit the public generally, not to protect the interest of a particular group.  Accordingly, a violation of the SWMA does not give rise to a claim for negligence per se."); Tri-County Bus. Campus Joint Venture v. Clow Corp., 792 F. Supp. 984, 995 (E.D. Pa. 1992) ("[Defendant] correctly notes . . . that a plaintiff cannot . . . [initiate] a cause of action for negligence *per se* based on SWMA violations."); Pottstown Indus. Complex v. P.T.I. Servs., Inc., No. 91-5660,

---

[5] Section 288 of the RESTATEMENT (SECOND) OF TORTS, reads in pertinent part:

> The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively

> . . .

> (b) to secure to individuals the enjoyment or rights or privileges to which they are entitled only as members of the public . . . .

RESTATEMENT (SECOND) OF TORTS § 288.

1992 WL 50084, *14 (E.D. Pa. Mar. 10, 1992) ("[A] violation of . . . the SWMA did not constitute negligence *per se*, because the statutory purpose was to secure to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm.); Fallowfield Dev. Corp. v. Strunk, No. CIV. A. 89-8644, 1991 WL 17793, *10 (E.D. Pa. Feb. 11, 1991) ("The statue is intended to protect the health, safety and welfare of the community and not individuals seeking to recover pecuniary losses . . . . Accordingly, the negligence per se claim is dismissed.") ("Fallowfield II"); Lutz v. Chromatex, Inc., 718 F. Supp. 413, 428 (M.D. Pa. 1989) ("[T]he court would be going against the expressed intentions of the legislature by permitting plaintiffs' negligence *per se* claim to proceed."); Wagner v. Anzon, Inc., 684 A.2d 570, 575 (Pa. Super. Ct. 1996) (quoting Fallowfield I with approval); but see Roth v. Cabot Oil & Gas Corp., 919 F. Supp. 2d 476, 489 (M.D. Pa. 2013) (citing Fallowfield Dev. Corp v. Strunk, No. CIV. A. 89-8644, 1990 WL 52745, *1 (E.D. Pa. Apr. 23, 1990) ("Fallowfield I"); Sharp v. Artifex, Ltd., 110 F. Supp. 2d 388, 393 (W.D. Pa. 1999) (citing Fallowfield I).

Despite this substantial authority to the contrary, the Plaintiffs seek to rely on a case that incorrectly stated the law on this point. The confusion ensued from two seemingly contradictory decisions issued by the same court on this very issue in a

case.  In <u>Fallowfield I</u>, a district court considering this statute's applicability to

negligence *per se* wrote: "[t]he policy behind the SWMA . . . is to protect the

citizens of this Commonwealth from the dangers of the improper disposal of

hazardous and solid waste . . . .  Accordingly, this Court believes that these policies

would be furthered by allowing violations of the SWMA . . . to serve as the basis

for a claim of negligence per se."  <u>Fallowfield I</u>, 1990 WL 52745, at *20.  In a later

opinion, however, the same court revisited this issue, and wrote:

> In the Memorandum of April 23, 1990, this Court . . . opined that the
> policies behind the legislation would be furthered by allowing
> violations of . . . the SWMA to serve as the basis for a claim of
> negligence per se.  Further reflection reveals this statement might lead
> to the erroneous inference that the standards of reasonableness under
> the . . . SWMA have been adopted by this Court under the negligence
> per se theory.  This would be a misstatement of the law.
>
> . . .
>
> The SWMA is intended, *inter alia*, to "protect the public health, safety
> and welfare from the short and long term dangers of transportation,
> processing, treatment, storage, and disposal of all wastes."  Pa. C.S.A.
> tit 35, § 6018.102(4) (Purdon's 1990 Supp.)
>
> . . .
>
> The special harm suffered by [the plaintiffs] in this case is distinct
> from the interest of the community qua public at large which the
> statues are intended to protect.  The statute is intended to protect the
> health, safety and welfare of the community and not individuals
> seeking to recover pecuniary losses.  The statute specifically permits
> the continued use of common law claims to further that interest.
> Accordingly, the negligence per se claim is dismissed.

<u>Fallowfield II</u>, 1991 WL 17793, at *9–10.

Despite, also,  this clear statement of the law that the SWMA does not support a negligence *per se* argument and the overwhelming authority in accordance with that opinion, the Plaintiffs point to one district court opinion that adopted the dicta in <u>Fallowfield I</u>.  <u>See</u> <u>Roth</u>, 919 F. Supp. 2d at 489.  That court, however, seemingly erred as there is no indication it discovered the later <u>Fallowfield II</u> decision offering a clear statement of the law in contravention of Plaintiffs' position.  This Court sides with the cogent analysis in <u>Fallowfield II</u> and the overwhelming authority that elucidates that the SWMA does serve as a basis for a negligence *per se* claim.  <u>See, e.g.</u>, *supra*, at 9–12.

Further, SWMA does not create a private right of action for the recovery of money damages applicable to this case, nor do Plaintiffs allege one.  <u>See</u> <u>Clow Corp</u>, 792 F. Supp. at 995.  Accordingly, the Plaintiffs' claims based on SWMA are dismissed with prejudice.

### 4.    <u>Arbitration</u>

The Defendants assert that the claims of Plaintiffs Angel Umback, David Umback, Robert Donovan, Robin Donovan, Claud Arnold, and Lynsey Arnold against the Defendants must be dismissed and compelled to arbitration, as provided for in leases signed by these Plaintiffs and the Defendants.  The Plaintiffs assert that

the Defendants waived this arbitration defense by failing to timely raise affirmative

defenses in state court.  The Court addresses the Plaintiffs' waiver argument before

proceeding to the merits of the arbitration clause.

> *a.     Defendants Did Not Waive Arbitration Defense*

Plaintiffs argue that the Defendants waived the argument that the Plaintiffs'

claims are barred and must be compelled to arbitration as agreed by failing to raise

that defense in a timely manner prior to removing this case, and that they cannot

resurrect this defense by removal.[6]  Asserting that the Defendants' waived the

defense of arbitration by failing to raise it in state court in a timely manner, the

Plaintiffs turn to Pennsylvania Rules of Civil Procedure.  Rule 1026 states that

"every pleading subsequent to the complaint shall be filed within twenty days after

service of the preceding pleading."  PA. R. CIV. P. 1026.  Rule 1032 maintains that

"a party waives all defenses and objections which are not presented either by

preliminary objections, answer or reply."  PA. R. CIV. P. 1032.

The Plaintiffs filed their initial Complaint in the Court of Common Pleas of

---

[6] In asserting this argument, the Plaintiffs erroneously rely on courts that state: "a claim that is time-barred under state law cannot have life breathed into it by being removed to federal court."  Morton v. Meagher, 171 F. Supp. 2d 611, 616 (E.D. Va. 2001) (quoting Witherow v. Firestone Tire & Rubber Co., 530 F.2d 160 (3d Cir. 1976)).  While this is a correct statement of the law, it does not apply to the circumstances that the Plaintiffs seek to address.  Notably, the courts in these cited cases were referring to a statute of limitations as a time bar to a claim, which is substantive state law and a wholly different matter than a mere procedural pleading deadline.

Dauphin County, Pennsylvania, on December 27, 2013, and served the defendants with those documents on January 3, 2014.  On January 28, 2014, twenty-five (25) days later, Defendants removed the action to federal court and filed their motions shortly thereafter.  Plaintiffs contend that, by failing to respond by January 23, 2014, the deadline established by the operation of the Pennsylvania Rules of Civil Procedure cited herein, the Defendants' waived a number of defenses prior to removal, including the right to enforce the arbitration clause.

The Defendants, in contrast, argue that they timely filed all federal procedures for removal and that the action is governed by federal procedural law. A defendant must remove a case within thirty (30) days after the defendant receives a copy of the initial pleading, or within thirty (30) days after service of summons upon defendant.  28 U.S.C. § 1446(b)(1).  Here, the Defendants removed within twenty-five (25) days of being served with the Complaint, which is timely removal under the statute.

Next, a Defendant must respond to the complaint within seven (7) days of filing the notice of removal.  FED. R. CIV. P. 81(c)(2).  Here, the Defendants filed their Motion to Dismiss within the seven day time frame, rendering their filings timely under federal law.

"A removed action proceeds as if it had originally been brought in federal

14

court; thus, we take the case as though everything done in the state court had been done in the federal district court." Williams v. Lampe, 399 F.3d 867, 870 (7th Cir. 2005) (citing First Republic Bank Fort Worth v. Norglass, Inc., 958 F.2d 117, 119 (5th Cir. 1992); Chicago R.I. & P.R. Co. v. Igoe, 212 F.2d 378, 382 (7th Cir. 1954)); see also Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 139 n.3 (3d Cir. 1999) ("Once removed, jurisdiction in the District Court is original and federal procedure applies."). The Defendants filed their Motion to Dismiss in a timely fashion under federal laws and rules. Moreover, even if the Defendant did not timely file the requisite motion or pleading, Federal Rule of Civil Procedure 15(a)(2) commands the Court to "freely give leave [to amend pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2); see also Lampe, 399 F.3d at 871 ("[T]he district court has the discretion to allow an answer to be amended to assert an affirmative defense not raised initially."). Accordingly, the Defendant is not procedurally bared from raising its asserted defenses.

### b.    Two Leases Require Arbitration

The Defendants argue that the arbitration clauses in the Umbachs', Donovans', and Arnolds' leases require arbitration deprive the court of jurisdiction on the merits at this juncture. The Plaintiffs make two substantive arguments in response: i) the Plaintiffs' nuisance claims do not arise from actions within the

scope of the leases; and, ii) the Arnolds' lease does not contain an arbitration clause; therefore, his claims are not barred by a failure to arbitrate.  The first argument is unavailing—the Umbachs' and Donovans' claims are barred by the arbitration clauses in their leases.

Questions of arbitrability are generally questions for judicial determination. AT & T Techs., Inc. v. Communc'ns Workers of Am., 475 U.S. 643, 649 (1986); Quilloin v. Tenet Health System Philadelphia, Inc., 673 F.3d 221, 228 (3d Cir. 2012).  "Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted."  Palcko v. Airborne Express, Inc., 372 F.3d 588, 597–98 (3d Cir. 2004).

"Under Pennsylvania law, the parties must submit an issue to arbitration where: (1) the parties entered into an agreement to arbitrate, and (2) the dispute falls within the scope of that agreement."  McAlister v. Sentry Ins. Co., 958 F.2d 550, 553 (3d Cir. 1992) (citing Rocca v. Pa Gen Ins. Co., 358 Pa. Super. 67, 516 A.2d 772, 772–73 (1986)).  Agreements to arbitrate are generally  "on an equal footing with other contracts."  AT & T Mobility, LLC v. Concepcion, 131 S. Ct. 1740, 1742 (2011).  Because "[a]rbitration is strictly a matter of contract," arbitration agreements are subject to the principles of contract interpretation.  Bel-Ray Co., Inc.

v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999). "Where the language of

the contract is clear and unambiguous, a court is required to give effect to that

language." Koenig v. Progressive Ins. Co., 599 A.2d 690, 691 (Pa. Super. 1991);

see also Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 469

A.2d 563, 566 (1983).

The leases between the Defendants and the Umbachs and Donovans are

identical for this purpose, and the arbitration clauses at issue read:

> ARBITRATION: In the event of a disagreement between Lessor and
> Lessee concerning this Lease, performance thereunder or damages
> caused by Lessee's operations, the resolution of all such disputes shall
> be determined by arbitration in accordance with the rules of the
> American Arbitration Association.  All fees and costs associated with
> the arbitration shall be borne equally by Lessor and Lessee.

Defs.' Mot. Dismiss, Ex. A, 3, 8, Feb. 4, 2014, ECF No. 4 [hereinafter

Lease].[7]

This language is a clear and unambiguous expression that the Parties agreed

to arbitrate "[i]n the event of a disagreement" between them.  Id.  Plaintiffs argue,

however, that the scope of that agreement does not extend to the facts underlying

---

[7] In deciding a motion to dismiss, the Court may consider the allegations in the
Complaint, exhibits attached to the Complaint, and matters of public record.  See Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Because
these leases are recorded in the public record, they are appropriate to consider in adjudicating the
Defendants' motion.  See, e.g., Sarsfield v. Citimortgage, Inc., 707 F. Supp. 2d 546, 553 n.2
(M.D. Pa. 2010) (Rambo, J.).

their claims.  Specifically, the Plaintiffs argue that the phrases "Lessee's operations"[8] and the "damages caused by Lessee's operations" are nowhere defined in the agreement.  Id.  Because they are not defined in the agreement, the Plaintiffs argue that their meaning is ambiguous and must be interpreted.

Without citation to any portion of the text of the lease agreements or any other legal authority, the Plaintiffs "argue that the more reasonable interpretation of this portion of the clause is that the activities covered would only be those which are carried out on the lands included in the lease."  Pls.' Br. Opp'n Defs.' Mot. Dismiss 7, Feb. 25, 2014, ECF No. 13 [hereinafter Pls.' Br.].  Under that interpretation, the Plaintiffs allege that the Defendants did not demonstrate that Plaintiffs' claims resulted from Defendants' activities on or relating to these specific leased properties—thus, Plaintiffs argue that the claims are beyond the scope of the arbitration clause.

Assuming that the phrase "Lessee's operations" is ambiguous, the proper approach is to discern its meaning from reading the contract as a whole.[9]  See

---

[8] In their Brief, the Plaintiffs actually use the phrase "Lessee's activities" in reference to the arbitration clause.  See Pls.' Br., at 7.  That phrase appears nowhere in the arbitration clause itself.  The Court assumes this is mere scrivener's error, and applies the Plaintiffs' arguments to the phrase "Lessee's operations," which is the phrase appearing in the arbitration clause that is operative with respect to the scope of the that clause.

[9] "[A]ll provisions in the agreement will be construed together and each will be given effect . . . we will not interpret one provision of a contract in a manner which results in another portion being annulled."  LJL Transp., Inc. v. Pilot Air Freight Corp., 599 Pa. 546, 560, 962

Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987).  The

Defendants' activities on properties other than the leased property specifically at

issue is contemplated by the plain and unambiguous terms of the lease itself.  The

lease reads:

> Lessor hereby leases exclusively to Lessee . . . such exclusive rights as
> may be necessary or convenient for Lessee, at its election, to explore
> for, develop, produce, measure, and market production from the
> Leasehold, and from adjoining lands . . . [and] to use or install roads,
> electric power and telephone facilities, and to construct pipelines with
> appurtenant facilities . . . for use in the production and transportation
> of products from the Leasehold or from neighboring lands across the
> Leasehold . . . .

Lease, at 1, "Leasing Clause."

Accordingly, a fair reading of the leases' terms that appropriately harmonizes

their provisions renders the phrase "damages caused by Lessee's operations" to

include operations by Defendants that were conducted on other leased or

neighboring properties.  See id.  The plain language of the lease, which manifests

the Parties' intent, indicates that Defendants' potential operations on neighboring

lands and their possible affects on the land subject to the lease itself were

contemplated by the Parties.  Thus, any disagreement based on those activities is

within the scope of the arbitration clause by its plain terms.

---

A.2d 639, 647–48 (2009) (internal citations omitted).  "[A] contract should be read so as to give
meaning to all of its terms when read as an entirety."  Contrans, 836 F.2d at 169.

Unlike the Umbachs and Donovans, however, the Arnolds' lease does not contain an arbitration clause.  See Defs.' Mot. Dismiss, Ex. A, at 11–16. Accordingly, the Arnolds are not bound by any duty to arbitrate and may raise their claims in this court.

Therefore, because the Umbachs and Donovans agreed to arbitrate their claims arising out of "damages caused by Lessee's operations," and those operations are the basis for the Plaintiffs' claim, the arbitration clauses in their leases manifest binding agreements to arbitrate concerning these claims that fall within the scope of those agreements.  The Umbachs and Donovans did not demonstrate that they engaged in arbitration in satisfaction of this clause; accordingly, their claims for "damages caused by Lessee's operations" are dismissed and compelled to arbitration.

## B.    <u>Motion to Sever</u>

The Defendants also filed a Motion to Sever for Misjoinder Pursuant to Federal Rule of Civil Procedure 21.  Federal Rule of Civil Procedure 20 (a) provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  FED.

R. CIV. P. 20(A).

Misjoinder is "[t]he improper union of parties in a civil case." BLACK'S LAW DICTIONARY (9th ed. 2009).  Where there has been a misjoinder of parties because they do not satisfy the requirements of Rule 20(a), Rule 21 authorizes the Court to "on just terms, add or drop a party" and "may also sever any claim against a party." FED. R. CIV. P. 21.  The Court enjoys broad discretion in deciding Rule 21 motions, Cooper v. Fitzgerald, 266 F.R.D. 86, 88 (E.D. Pa. 2010), and may take into consideration "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." Official Committee of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (internal quotations and citation omitted).

In the case at bar, the Defendants argue that the Court should drop misjoined parties and sever claims because the Plaintiffs and facts underlying their claims do not satisfy the requirements of Rule 20(a).  The Defendants assert that "[w]hile there is some overlap in the wording of Plaintiffs' nuisance and negligence claims, each of these eight family groups allege different injuries due to exposure to different natural gas wells, at various distances from their properties, and in different stages of development, completion, and operation." Br. Supp. Defs.' Mot. Sever 2, Feb. 4, 2013, ECF No. 7.

In light of the fact that the Court dismissed several of the Plaintiffs' claims without prejudice and with leave to amend, the Court will afford the Plaintiffs the same opportunity on this issue.  Accordingly, the Defendants' Motion to Sever for Misjoinder is denied without prejudice.  The Plaintiffs have the opportunity to address any deficiencies in their pleadings with an amended complaint, and the Defendants may raise this issue again after the time for filing an amended complaint expires.[10]

### C.   **Motion for *Lone Pine* Order**

The Defendants also filed a Motion for a <u>Lone Pine</u> Case Management Order in the event their Motion to Sever was unsuccessful (ECF No. ).  Because the Court now denies the Motion to Sever without prejudice and anticipates the Plaintiffs' will file an amended complaint, the Court also denies the Defendants' specific Motion for a Case Management Order without prejudice.

### III.   CONCLUSION

In accordance with the foregoing reasoning, the Defendants' Motion to

---

[10] In response to Defendant's Motion for Misjoinder, the Plaintiffs again raised the argument that the Defendants waived the right to challenge improper joinder by not filing preliminary objections to misjoinder in state court within twenty (20) days of service of the complaint in accordance with the Pennsylvania Rules of Civil Procedure.  Again, this argument is unavailing, because the Federal Rules of Civil Procedure govern this removed action, and the Court enjoys broad discretion to address misjoinder issues under Rules 20 and 21.  <u>See</u>, *supra*, at <u>Fitzgerald</u>, 266 F.R.D. at 88.

Dismiss is granted in part and denied in part.  The Defendants' Motion to Sever and

Motion for a *Lone Pine* Order are denied without prejudice.

An appropriate Order follows.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge