IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELIA RUSSELL, JIM SPLAIN, | : | Case No. 4:14-cv-00148 |
| SUE SPLAIN, JANELLE SPLAIN, | : | |
| SUSAN HOUSEL, JOHN CHAFFEE,| : | |
| CAROL FRENCH, CLAUD | : | |
| ARNOLD, LYNSEY ARNOLD, | : | (Judge Brann) |
| ROBERT DONOVAN, ROBIN | : | |
| DONOVAN, CAROLYN KNAPP, | : | |
| N.K., *a minor, by Carolyn Knapp,* | : | |
| *guardian,* M.K., *a minor, by Carolyn* | : | |
| *Knapp, guardian,* ANGEL | : | |
| UMBACH, DAVID UMBACH, and | : | |
| ALLISON KOLESAR, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CHESAPEAKE APPALACHIA, | : | |
| L.L.C., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
March 2, 2015

Before the Court are Defendant Chesapeake Appalachia, L.L.C. and

Defendant Superior Well Services renewed Motion to Sever (ECF No. 38) and

Motion for a *Lone Pine* case management order (ECF No. 36).[1]  The Court retains

---

[1] In their Brief in Support of an earlier Motion to Dismiss, Defendants state that Superior Well Services is incorrectly named in the caption, and allege the true defendant should be Nabors Completion & Production Services Co.  See Defs.' Br. Supp. Mot. Dismiss 1, Feb. 4, 2014, ECF No. 5.

jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.[2]

For the reasons that follow, the Defendants' motions are denied without prejudice.

## I.   BACKGROUND

The Court writes primarily for the Parties; accordingly, these facts serve merely to orient the reader in brief.  The Plaintiffs[3] in this case are residents and/or owners of property situate in Bradford County, Pennsylvania.  The Defendants' are companies conducting natural gas exploration, extraction, transportation, and associated activities on or around the Plaintiffs' various properties.

On December 27, 2013, Plaintiffs filed a Complaint in the Court of Common Pleas of Dauphin County, Pennsylvania.  The Plaintiffs alleged that the noise, traffic, lights, and other aspects of Defendants' operations constitute common law nuisance, negligence, and negligence *per se*. The Plaintiffs served the Complaint

---

[2] Defendant Chesapeake is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Defs.' Not. Removal, ¶¶ 4–5.  Defendant Nabors is a Delaware corporation with its principal place of business in Texas.  Id., ¶ 6.  The various Plaintiffs are citizens of Pennsylvania or New Jersey, rendering diversity jurisdiction appropriate.  See 28 U.S.C. § 1332; Defs.' Not. Removal, Ex. 1, Pls.' Compl., ¶¶ 3, 6, 8, 11, 14, 16, 19, 21.

[3] The Plaintiffs in this case, as they appear in the caption, are: Sheila Russell; Jim Splain; Sue Splain; Janelle Splain; Susan Housel; John Chaffee; Carol French; Claude Arnold; Lynsey Arnold; Robert Donovan; Robin Donovan; Carolyn Knapp; N.K., a minor by Carolyn Knapp, guardian; M.K., a minor by Carolyn Knapp, guardian; Angel Umbach; David Umbach; and Allison Kolesar.  For the sake of brevity, the Court refers to them collectively as "Plaintiffs," except in those portions of the Memorandum where they are specifically named.

on the Defendants on January 3, 2014, and the Defendants removed the action to this Court on January 28, 2014 (ECF No. 1).  The Defendants filed an initial Motion to Dismiss and Motion to Sever on February 4, 2014, and their Motion for a *Lone Pine* Case Management Order on March 12, 2014.

By Memorandum and Order of November 21, 2014, the Court granted in part and denied in part the Defendants' Motion to Dismiss, and denied their Motion to Sever and Motion for a *Lone Pine* Case Management Order without prejudice (ECF Nos. 32, 33).  The Plaintiffs then filed an Amended Complaint (ECF No. 34), maintaining allegations of nuisance and negligence.  The Defendant filed an Answer, and renewed their motions to sever and for a *Lone Pine* case management order.  The Parties briefed those motions and they are now ripe for disposition. The Court turns first to the Motion to Sever, and then addresses the Motion for a *Lone Pine* Order, finding that neither motion should be granted at this juncture.

## II.   DISCUSSION

### A.   <u>Severance Is Not Warranted at this Juncture</u>

Federal Rule of Civil Procedure 20 allows courts to permit multiple litigants to join in the same lawsuit if they satisfy the enumerated requirements.[4]  "The rule

---

[4] The pertinent text of the Rule provides:

(1)   ***Plaintiffs.***  Persons may join in one action as plaintiffs if:
     (A)  they assert any right to relief jointly, severally, or in the alternative with

imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (2) some question of law or fact common to all the parties must arise in the action." Gilyard v. Dauphin Cnty. Work Release, No. 1:10-cv-1657, 2010 WL 4623996, *1 (M.D. Pa. Nov. 5, 2010) (Conner, J.) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)).

"The purpose of Rule 20(a) is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits." Miller v. Hygrade Food Products Corp., 202 F.R.D. 142, 144 (E.D. Pa. 2001) (internal quotations and citation omitted). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Mosley, 497 F.2d at 1332–33.

Rule 21 regarding misjoinder, however, allows parties to move to sever any claim or party that has been improperly joined. See FED. R. CIV. P. 21. Misjoinder

---

respect to or arising our of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all plaintiffs will arise in the action.

FED. R. CIV. P. 20(a).

is "[t]he improper union of parties in a civil case." BLACK'S LAW DICTIONARY (9th ed. 2009).  Where there has been a misjoinder of parties because they do not satisfy the requirements of Rule 20(a), Rule 21 authorizes the Court to "on just terms, add or drop a party" and "may also sever any claim against a party."  FED. R. CIV. P. 21.  The Court enjoys broad discretion in deciding Rule 21 motions, Cooper v. Fitzgerald, 266 F.R.D. 86, 88 (E.D. Pa. 2010), and may take into consideration "the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." Official Committee of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (internal quotations and citation omitted).

"Courts generally apply a case-by-case approach when considering whether the facts of several claims constitute a single transaction or occurrence or a series of transactions or occurrences." Garcia v. Brock-Weinstein, No. 13-cv-7487, 2014 WL 2957487, *2 (E.D. Pa. Jul. 1, 2014) (internal quotation and citation omitted). "'Transaction' is a word of flexible meaning, and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Morris v. Kesserling, No, 1:09-cv-1739, 2010 WL 5158412, *2 (M.D. Pa. Dec. 14, 2010).

In determining whether a logical relationship exists between claims, the

Third Circuit has stated that courts must engage in "a detailed analysis . . . to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." <u>Xerox Corp. v. SCM Corp.</u>, 576 F.2d 1057, 1059 (3d Cir. 1978).  Courts have found that a "systematic pattern" between tortious events will satisfy the "series of transactions or occurrences" prong.  <u>Gruening v. Sucic</u>, 89 F.R.D. 573, 574 (E.D. Pa. 1981).  Furthermore, "[c]ourts in this Circuit have found that 'the same series of transactions or occurrences prerequisite under Rule 20 essentially consumes the second requirement that there arise a question of law or fact common to all joined parties.'"  <u>DirecTV, Inc. v. Chorba</u>, 3:03-cv-0843, 2003 WL 24178469, 2 (quoting <u>Norwood Co. v. RLI Ins. Co.</u>, CIV.A. No. 01-6153, 2002 WL 523946, *3 (E.D. Pa. Apr. 4, 2002)).

In this case, the Defendants argue the Plaintiffs do not satisfy Rule 20, alleging that "[w]hile there is some overlap in the wording of Plaintiffs' nuisance and negligence claims, each of these eight family groups allege different injuries due to exposure to different natural gas wells, at various distances from their properties, and in different stages of development, completion, and operation."  Br. Supp. Defs.' Mot. Sever 2, Feb. 4, 2013, ECF No. 7.  The Plaintiffs, in contrast, allege that their "injuries are the result of the same set of circumstances and all

6

stem from a single systematic pattern of reckless disregard for the residents surrounding Defendants' natural gas activities within Bradford County, Pennsylvania, even though the specifics of each Plaintiff' situation may differ." Pls.' Br. Opp'n 4, Jan. 7, 2015, ECF No. 41.  Each Plaintiff, they claim, is not being affected by individual wells in isolation, but rather the systematic pattern and practice of the Defendants' operations throughout the geographic area at issue.

At this point in the litigation, after only the pleadings and initial motions have been filed and before even a case management conference has yet to occur, there are material facts in dispute and many facts unknown to both the Parties and the Court.  The Plaintiffs have pled facts to suggest that there are "many of the same factual issues" or at least "offshoots of the same basic controversy between the parties."  Xerox Corp., 576 F.2d at 1059.  Given the liberal policies favoring joinder of parties absent disproportionate prejudice and the Court's ability to sever parties or claims at any time, the Court is inclined to deny Defendants' motion without prejudice and allow them to raise the issue again in the future, if appropriate.

While the Defendants argue that a failure to sever the Plaintiffs at this point unduly prejudices them, the Court finds that is not the case.  Keeping the claims together during the discovery phase of the litigation would not prejudice any party,

and may encourage efficiency. See, e.g., Lane v. Tschetter, 2007 WL 2007493, *7

(D.D.C. Jul. 10, 2007).  The primary prejudice would arise if misjoined parties or

claims were allowed to go to trial before jurors, which may cause confusion.  The

Court and the Parties enjoy the opportunity to revisit this issue before that could

occur.  Therefore, the Court discerns no material prejudice to the Defendants by

deferring to the liberal policy behind joinder, proceeding to discovery so that the

Parties more fully develop the record, and then allowing the Defendants to raise

their motion to sever again prior to trial if they believe it is warranted.

Accordingly, the Defendants' motion is denied without prejudice.

### B.    *Lone Pine* Order Is Not Warranted at this Juncture

The Defendants also filed a motion requesting a "*Lone Pine*" case

management order in the event the Court denied their Motion to Sever.  A *Lone*

*Pine* case management order originated in the eponymous New Jersey Superior

Court case, and has been used to compel plaintiffs to present a *prima facie*

evidentiary showing in support of their claims before the usual summary judgment

phase of the litigation.[5]  See Lore v. Lone Pine Corp., No. L-33606-85, 1986 WL

---

[5] The Defendants' Motion asks the Plaintiffs to provide:

(1) the identity of the "toxic and/or radioactive substances" each Plaintiff was exposed to, the dates of exposure, and the amount of each chemical to which Plaintiffs were exposed;

(2) evidence supporting causation between Defendants' actions and the injuries in

8

637507 (N.J. Super. Nov. 18, 1986).

In <u>Lore v. Lone Pine</u>, a mass toxic tort case, the New Jersey Superior Court entered a pretrial order requiring "plaintiffs to provide sufficient information to establish the existence of a prima facie case." <u>Id.</u>, at *1.  At the time of the order, the case had been on file for nine months, but the plaintiffs had only served several of the defendants, and had failed to identify through discovery which defendants were responsible for which harms.  <u>Id.</u>  The defendants also presented the court with studies conducted by the United States Environmental Protection Agency that cast serious doubt on plaintiffs' claims of pollution damage.  <u>Id.</u>

In response to the plaintiffs' failure to put forth evidence in support of their claims, the court entered its order requiring the plaintiff to produce documentation of exposure to toxic substances, provide expert testimony supporting each plaintiff's claim of injury and causation, and provide expert opinions supporting their claims for diminution of property and the address of each property alleged to have declined in value.  <u>Id.</u> at *1–2.  After the plaintiffs failed to comply with the

---

question; and

(3) a description of the damages to land each Plaintiff sustained, the dates of the damage, and evidence Defendants caused the damage prior to allowing parties to move forward with full discovery.

Defs.' Mot Order, Dec. 24, 2014, ECF No. 36-1.

order, the court dismissed the case, stating: "[t]his Court is not willing to continue the instant action with the hope that the defendants eventually will capitulate and give a sum of money to satisfy plaintiffs and their attorney without having been put to the test of proving their cause of action." Id. at *4.

While no federal rule expressly authorizes the use of *Lone Pine* orders, federal courts have interpreted the broad case management powers Federal Rule of Civil Procedure 16 bestows on them.  See, e.g., McManaway v. KBR, Inc., 265 F.R.D. 384, 385 (S.D. Ind. 2009) ("*Lone Pine* orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involved complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . .' Fed. R. Civ. P. 16(c)(2)(L).").  As one federal court noted, "[r]eview of relevant case law thus indicates that *Lone Pine* orders appear to be utilized most often in cases involving complicated legal and factual issues in complex mass tort and toxic-tort litigation involving multiple parties, where the discovery process would be particularly burdensome, and where the plaintiff's ability to sustain their burden of proof was found to be questionable." Roth, 28

F.R.D. at 297.[6]

When considering a motion for *Lone Pine* orders, courts have examined a number of relevant factors, including: "(1) the posture of the litigation; (2) the case management needs presented[;] (3) external agency decisions that may bear on the

_____

[6] The <u>Roth</u> court included the following citations and parentheticals supporting its conclusion on the accepted use for *Lone Pine* orders:

> <u>See, e.g.</u>, <u>Avila v. Willitis Envtl. Remediation Trust</u>, 633 F.3d 828 (9th Cir. 2011) (affirming dismissal of plaintiffs' claims in complex environmental litigation where, five years after the litigation commenced, the plaintiffs failed to comply with the district court's order to make a *prima facie* showing of exposure and causation); <u>Acuna</u>, 200 F.3d at 340 (action involved approximately 1,600 plaintiffs suing over 100 defendants for injuries alleged to have occurred over four decades); <u>In re Avandia Mktg., Sales Practices and Prods. Liability Litig.</u>, 2010 WL 4720335, *1 n. 1 (E.D. Pa. Nov. 15, 2010) (citations omitted); <u>Abbatiello v. Monsato Co.</u>, 569 F. Supp. 2d 351, 353 n. 3 (S.D.N.Y. 2008) (toxic tort action involving multiple parties); <u>In re Vioxx Prods. Liab. Litig.</u>, 557 F. Supp. 2d 741, 743 (E.D. La. 2008); <u>Burns v. Universal Crop Protection Alliance</u>, 2007 WL 2811533 (E.D. Ark. Sept. 25, 2007) (action brought by 82 cotton farmers against five herbicide manufacturers under theories of strict liability, negligence, breach of warranty, and violation of state law, alleging that defendants' products damaged plaintiffs' cotton crops); <u>Morgan v. Ford Motor Co.</u>, 2007 WL 1456154, at *1, *7 (D.N.J. May 17, 2007) (toxic tort action involving more than 700 plaintiffs and multiple defendants); <u>Baker v. Chevron USA, Inc.</u>, 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007) (360 plaintiffs alleging injury from defendant's operation of a gasoline refinery); <u>In re Rezulin Prods. Liability Litig.</u>, 441 F. Supp. 2d 567 (S.D.N.Y. 2006) (28 plaintiffs suing manufacturer of prescription diabetes medication, in an action related to thousands of lawsuits for alleged liver damage allegedly caused by the medication); <u>In re Silica Prods. Liability Litig.</u>, 398 F. Supp. 2d 563 (S.D.Tex. 2005) (multi-district litigation involving approximately 10,000 plaintiffs alleging injury from silica exposure caused by more than 250 defendants); <u>In re 1994 Exxon Chemical Plant Fire</u>, 2005 WL 6252312 (M.D.La. Apr. 7, 2005) (consolidated multi-state toxic tort suits); <u>Renaud v. Martin Marietta Corp.</u>, 749 F. Supp. 1545 (D.Colo. 1990) (action involving over 30 plaintiffs suing a missile manufacturer for water pollution).

<u>Roth</u>, 287 F.R.D. at 297.

case; (4) the availability of other procedures that have been specifically provided for by rule or statute; and (5) the type of injury alleged and its cause." Roth, 287 F.R.D. at 298 (citing In re Digitek Prod. Liability Litig., 264 F.R.D. 249, 256 (S.D.W.Va. 2010)).  Courts also consider the complexity of the case and the possible pleading defects when evaluating motions for *Lone Pine* orders.  Id.

While *Lone Pine* orders are utilized in mass tort cases, courts have begun to express concern over "the untethered use of the *Lone Pine* process."  In re Digitek Prod. Liab. Litig., 264 F.R.D. 249, 257 (S.D.W.Va. 2010).  As one federal court wrote:

> A significant criticism of the *Lone Pine* order is that "it gives courts the means to ignore existing procedural rules and safeguards." Simeone v. Girard City Bd. of Educ., 171 Ohio App.3d 633, 872 N.E.2d 344, 350 (Ohio Ct. App. 2007).  The Court of Appeals of Ohio went on to warn that "[w]hen the *Lone Pine* order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply.  Furthermore, many *Lone Pine* orders are inconsistently applied, which further confuses their purpose."

Digitek, 264 F.R.D. at 258.

Expressing similar concerns, another court maintained that *Lone Pine* orders can be useful devises but that they should not be a "substitute for . . . a motion for summary judgment."  McManaway v. KBR, Inc., 265 F.R.D. 384 (S.D. Ind. 2009). "A *Lone Pine* order should issue only in an exceptional case and after the

defendant has made a showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information." McManaway, 265 F.R.D. at 389.

This is not such an exceptional case.  Here, the Defendants argue that the Court should impose a *Lone Pine* order requiring the Plaintiffs to make an initial *prima facie* evidentiary showing of exposure, injury, and causation before engaging in traditional discovery and case-management practices customary in federal court.  See Defs.' Br. Supp. 8, Dec. 24, 2014, ECF No. 37.  The Plaintiffs counter that the Defendants' request is akin to a psuedo-summary judgment order requiring that Plaintiffs, without the benefit of discovery, prove facts with specificity beyond what is required by the Federal Rules and ordinary federal practice at this juncture in the litigation.  See Pls.' Br. Opp'n 2, Jan. 7, 2015, ECF No. 42.

This Court concurs with the Plaintiffs.   While the Court acknowledges that some courts have imposed *Lone Pine* orders is mass toxic tort cases, the Court finds the claims in this case and the early procedural posture of this litigation "do not warrant the entry of such an unusual and burdensome order at this stage of the proceedings." Roth, 287 F.R.D. at 295.

Considering the factors courts generally evaluate, the posture of the

13

litigation is early and discovery has yet to commence.   *Lone Pine* orders are often

invoked *after* discovery has occurred for many months and the plaintiffs still fail to

produce substantial evidence.  See, e.g., Pinares v. United Techs. Corp., 2011 WL

240512 (S.D. Fla. Jan. 19, 2011); Avandia Mktg., Sales Practices & Prods. Liab.

Litig., 2010 WL 4720335 (E.D. Pa. Nov. 15, 2010); McManaway, 265 F.R.D. at

384.  Requiring Plaintiffs to prove their *prima facie* case with the specific evidence

the Defendants request at this juncture is effectively imposing a summary

judgment standard on the Plaintiffs without the benefit of discovery.  The Court is

not prepared to impose such a one-sided burden at this early stage in the litigation.

While this is a case involving multiple plaintiffs, the case management needs

are not so extraordinarily unique to require deviation from the effective and

familiar case management tools available: the Federal Rules of Civil Procedure.

Indeed, "[r]esorting to and crafting a *Lone Pine* order should only occur where

existing procedural devices explicitly at the disposal of the parties by statute and

federal rule have been exhausted or where they cannot accommodate the unique

issues of this litigation."  Roth, 287 F.R.D at 300.  This case does not yet present

such a situation.

Furthermore, while the Defendants conjecture that the Plaintiffs have no

evidence supporting their allegations, they have not made any substantive proffers

14

shedding doubt on the Plaintiffs' claims.  A central element supporting the original *Lone Pine* order was the EPA report casting serious doubt on the alleged pollution by those defendants.  <u>Lone Pine</u>, 1986 WL 637507 at *1.  Subsequent courts considering *Lone Pine* orders have considered the defendant's ability to produce evidence demonstrating the plaintiff's claims as dubious.  <u>See, e.g.</u>, <u>McManaway</u>, 265 F.R.D. at 389 ("A *Lone Pine* order should issue only . . . after the defendant has made a showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information.").  The Defendants make no similar showing here.

Regarding pleading deficiencies, while the Defendants' brief alleges undue ambiguity in the complaint, it is notable that the Defendants did not challenge the substantive sufficiency of the Plaintiffs' claims in their First Amended Complaint by a Rule 12 motion, and instead filed an answer.  The Court's sanction power under Rule 11 acts as a safeguard against attorneys filing frivolous claims, and the Court is not reticent to invoke it in appropriate circumstances.  <u>See</u> FED. R. CIV. P. 11(c).

In sum, the Defendants have not demonstrated why the Federal Rules of Civil Procedure and the Court's case management powers in relation to those rules are not sufficient to manage the course of this litigation.  There is no need for the

extraordinary imposition of a *Lone Pine* order at this juncture.  The Court will,

however, entertain all meritorious discovery motions allowed under the Rules, as

well as a renewed *Lone Pine* order in the event that the discovery process becomes

inappropriate.  Accordingly, the Defendants' Motion for a *Lone Pine* order is

denied.

## III.    CONCLUSION

Consistent with the foregoing, the Defendants' Motion to Sever and Motion

for a *Lone Pine* Case Management Order are denied.  An appropriate Order

follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge